**IRON WORKERS LOCAL UNION NO.17 INSURANCE FUND and Its Trustees, et al., Plaintiffs,**

v.

**PHILIP MORRIS INCORPORATED, et al., Defendants.**

No. 1:97–CV–1422.

United States District Court, S.D. Ohio, Eastern Division.

Dec. 2, 1998.

voluntarily dismissed as a defendant in this case    on September 8, 1998.

Eben O. McNair, Timothy Joseph Gallagher, Schwarzwald & Rock, Cleveland, OH, Jack Landskroner, Monica Zunt, Landskroner Law Firm, Cleveland, OH, John M. Broaddus, Robert J. Connerton, Connerton, Ray & Simon, Washington, DC, Michael C. Spencer, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY, Patrick J. Coughlin, Frank J. Janecek, Jr., Scott H. Saham, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Paul J. Pennock, Jerry Kristal, Weitz & Luxenberg, New York, NY, Lembhard G. Howell, Richard G. Piccioni, C. Cleveland Stockmeyer, Michael E. Withey, Paul L. Stritmatter, Philip G. Arnold, Kevin Coluccio, Keith L. Kessler, J. Murray Kleist, Stritmatter, Kessler, Whelan & Withey, Seattle, WA, George Kargianis, Kargianis, Watkins, Marler, Seattle, WA, Roger M. Adelman, Washington, DC, G. Robert Blakey, Notre Dame Law School, Notre Dame, IN, Einer R. Elhauge, Harvard Law School, Cambridge, MA, Mitchell M. Breit, Karen J.

Sabine, Weitz & Luxenberg, New York, NY, for Local 17 Intern. Assn of Bridge, & Iron Workers Insurance Fund, Local 38 International Brotherhood of Electrical Workers, Ohio Laborers Insurance Fund, Dealers–Unions Insurance Fund, and Its Trustees, Philip M. Zannella, Jr., Gary S. Adams and Mark A. Frey, Local 47 Welfare Fund No. 1, and Its Trustees Michael P. Murphy, Mark Davis, Dennis Dingow, Cheryl DeLauer, Martin Presser, Fred A. Scharler, Robert Pfhal and Richard Green, Toledo Electrical Welfare Fund, and Its Trustees, Todd Michaelson, Dennis C. Duffey, Jerry R. Porter, Thomas J. Sigurdson, Gerald W. Hasley, Robert Colgan, Jr., James J. Kozlowski and Patrick J. Jones, plaintiffs.

Lawrence R. Desideri, Thomas J. Frederick, Dan K. Webb, Kevin J. Narko, Bradley E. Lerman, Winston & Strawn, Chicago, IL, Hugh E. McKay, Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, OH, for Philip Morris, Inc. defendant.

Roger Allen Hipp, Jones, Day, Reavis & Pogue, Cleveland, OH, Matthew A. Kairis, Jeffrey J. Jones, Melanie S. Fahey, Jones, Day, Reavis & Pogue, Columbus, OH, Daniel F. Kolb, Davis, Polk & Wardwell, New York, NY, for RJR Nabisco, Inc., RJR Nabisco Holdings Corp., defendants.

Roger Allen Hipp, Jones, Day, Reavis & Pogue, Cleveland, OH, Matthew A. Kairis, Jeffrey J. Jones, Melanie S. Fahey, Jones, Day, Reavis & Pogue, Columbus, OH, Peter J. Biersteker, Jones, Day, Reavis & Pogue, Washington, DC, for R.J. Reynolds Tobacco Co., defendant.

Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, Kenneth N. Bass, Paul Taylor, James C. Munson, Kirkland & Ellis, Washington, DC, for Brown & Williamson Tobacco Corp., American Tobacco Co., defendants.

John Winship Read, Amanda Martinsek, Vorys, Sater, Seymour & Pease, Cleveland, OH, for British American Tobacco Co., Ltd.

Percy Squire, Lloyd Pierre–Louis, Bricker & Eckler, Columbus, OH, Thomas D. Lambros, Janik & Forbes, Cleveland, OH, Mark G. Cunha, Patrick D. Bonner, Jr., Randall

Rainer, Simpson, Thacher & Bartlett, New York, NY, for B.A.T. Industries P.L.C., defendant.

Craig E. Gustafson, Gary R. Long, William J. Crampton, Bruce R. Tepekian, Shook, Hardy & Bacon, Kansas City, MO, Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, Patrick M. McLaughlin, John F. McCaffrey, McLaughlin & McCaffrey, Cleveland, OH, for Lorillard Tobacco Co., defendant.

Thomas P. Meaney, Jr., Kenneth J. Walsh, Tyler Lee Mathews, McDonald, Hopkins, Burke & Haber, Cleveland, OH, Marc E. Kasowitz, Marie V. Santacroce, Michael M. Fay, Julie R. Fischer, Marie V. Santocroce, Kasowitz, Benson, Torres & Friedman, New York, NY, for Liggett Group, Inc., defendant.

Steven D. Bell, Ulmer & Berne, Cleveland, OH, for U.S. Tobacco Sales and Marketing Co., defendant.

David J. Hooker, Thomas J. Collin, Robert Francis Ware, Jr., Thompson, Hine & Flory, Cleveland, OH, Steven Klugman, Harry Zirlin, Anne E. Cohen, Debevoise & Plimpton, New York, NY, for Tobacco Research U.S.A., Inc., defendant.

Charna E. Sherman, David J. Michalski, James M. Drozdowski, Kathleen Balthrop Havener, Hahn, Loeser & Parks, Cleveland, OH, for Tobbacco Institute, defendant.

Susan V. Belanger, Arter & Hadden, Cleveland, OH, John P. Gartland, Arter & Hadden, Columbus, OH, Michael C. Lasky, Davis & Gilbert, New York, NY, Hill & Knowlton, Inc., pro se, for Hill & Knowlton, Inc., defendant.

Timothy D. Johnson, Forrest A. Norman, III, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Smokeless Tobacco Council, Inc., defendant.

## OPINION AND ORDER

GWIN, District Judge.

On September 24, 1998, defendants moved this Court to certify its September 10, 1998 order for interlocutory review pursuant to 28 U.S.C. § 1292(b) [Doc. 253].[1] On October 28, 1998, defendants also filed a motion requesting the Court to certify for interlocutory

---

1. In the September 10, 1998 order, this Court denied defendants' motion to dismiss this action under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action.

review its order certifying this case as a class action.[2]

Because defendants had filed motions for summary judgment and because this Court's decision on those motions might substantially affect the need for certification and the scope of certification, the Court delayed ruling upon defendants' motions for certification. On November 23, 1998, this Court granted defendants' motion for summary judgment as to plaintiffs' federal and state antitrust claims on the statute of limitations grounds. The Court also granted defendants' motion for summary judgment as to plaintiffs' claim for punitive damages. The Court otherwise denied the remainder of defendants' motions for summary judgment.

The Court now examines defendants' motions to certify this action for interlocutory review pursuant to 28 U.S.C. § 1292(b). Because the Court finds that there can be no substantial ground for a difference of opinion on plaintiffs' right to a trial on the remaining claims, and because an immediate appeal would hinder the end of this litigation, the Court denies defendants' motions to certify certain questions for interlocutory review.

## I. Procedural background

The plaintiffs are certain trusts organized to provide health-related benefits to workers and their families.[3] The representative plaintiffs are six jointly-administered, multi-employer health and welfare trust funds in the state of Ohio. The class consists of approximately 100 other similarly-situated health and welfare trusts, all in Ohio.[4] Both the named plaintiffs and the members of the certified class are nonprofit, tax-exempt trusts organized under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1100.01 *et seq.*, and the Taft–Hartley Act, 29 U.S.C. § 186(c)(5).

On May 20, 1997, Plaintiff Funds brought this action against tobacco-related entities.[5] Plaintiffs allege that since about 1953, the defendants illegally shifted the large health care costs of smoking onto plaintiffs, proposed class members, and other health care payers. Plaintiff Funds contend the defendants expected, foresaw, and planned this shift of expenses. Plaintiffs further allege that as the direct result of the defendants' wrongdoing, plaintiffs and other similar trust funds had to make substantial expenditures to pay for treatment of smoking-related illnesses and addiction.

In their First Amended Complaint, Plaintiff Funds stated eighteen (18) counts against the defendants. To date, three (3) counts remain for adjudication.[6] In Count I of the

---

2. On October 20, 1998, this Court granted plaintiffs' motion to certify this cause as a class action suit pursuant to Fed.R.Civ.P. 23 [Doc. 310].

3. Plaintiffs are Iron Workers Local Union No. 17 Insurance Fund, IBEW Local No. 38 Health & Welfare Fund, Ohio Laborers' District Council–Ohio Contractors' Association Insurance Fund, Dealers–Unions Insurance Fund, Local 47 Welfare Fund No. 1, Toledo Electrical Welfare Fund and their trustees.

4. Ohio-based multi-employer trust funds, by one estimate, pay health care costs of approximately 450,000 persons. The proposed class consists of all jointly-administered, multi-employer health and welfare trusts in Ohio and their respective trustees. The trust funds serve union members in industries, such as transportation and the building trades, where a unionist might have a series of employers throughout his or her career. See Doc. 153, Affidavit of Michael E. Withey.

5. Defendants are Philip Morris, Inc.; RJR Nabisco, Inc.; RJR Nabisco Holdings Corp.; R.J. Reynolds Tobacco Co.; Brown & Williamson Tobacco Corp.; Lorillard Tobacco Co.; American Tobacco Co.; Liggett Group, Inc.; United States

Tobacco Sales and Marketing Co., Inc.; The Council for Tobacco Research—U.S.A., Inc.; The Tobacco Institute, Inc.; Hill & Knowlton, Inc.; and British–American Tobacco Co. Ltd. ("BAT-Co.").

On September 8, 1998, plaintiffs voluntarily dismissed The Smokeless Tobacco Council, Inc. as a defendant in this case [Doc. 237]. Further, by order entered September 14, 1998, this Court dismissed Defendant B.A.T. Industries PLC as a defendant in this case [Doc 238].

6. On September 8, 1998, plaintiffs voluntarily dismissed without prejudice certain claims. These include Count V (fraud), Count IX (unjust enrichment), and Count XII (violation of the Ohio Deceptive Trade Practices Act). Plaintiffs earlier withdrew Count VIII (breach of warranty), Count XIII (violation of ERISA), Count XVII (strict product liability), and Count XVIII (negligence). [See Doc. 237].

On June 22, 1998, Plaintiff Funds also voluntarily dismissed certain claims based upon the "regulatory enterprise." These claims include Count II (violation of federal RICO, 18 U.S.C. § 1962(a) and (d)); Count III (violation of feder-

Amended Complaint, plaintiffs make claim under the Federal Racketeer Influenced and Corrupt Organizations Act of 1970, also known as RICO. 18 U.S.C. § 1961 *et seq.* In Count XIV, plaintiffs make claim under the Ohio equivalent of RICO, the Ohio Pattern of Corrupt Activity Act ("Ohio Corrupt Activities Act"), Ohio Rev.Code §§ 2923.31 *et seq.* In Count XI of the Amended Complaint, plaintiffs make a state law claim of civil conspiracy.[7]

In this case, Plaintiff Funds seek to recover costs incurred because of the defendants' alleged wrongful conduct. The Funds characterize their damages as economic losses arising from the "diminishment and expenditure of Fund assets" paid to provide medical treatment for tobacco-related illnesses. Plaintiff Funds also seek treble damages on their federal and state RICO claims, injunctive and declaratory relief, including disgorgement, and restitution and punitive damages.

At an early case management conference, and after party participation, this Court set this case for trial on February 22, 1999.

Since filing this action, the parties have completed the broad majority of discovery needed to prepare for trial. The parties have conducted more than 120 depositions. The parties have identified experts and provided extensive reports. The parties also have taken or have scheduled the depositions of experts. The plaintiffs have expended large effort and have identified more than 3,000 trial exhibits. While much work remains, the heavy lifting has been done.

### A. Motion to Dismiss

On January 8, 1998, defendants filed a motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6) [Doc. 27]. On September 10, 1998, this Court generally denied the defendants' motion to dismiss this case [Doc. 234].[8]

In their motion to dismiss for failure to state claims upon which relief might be given, defendants made the general defense that plaintiffs' claims were too remote to allow recovery under federal and state RICO law. Defendants also asserted defenses to individual claims made by plaintiffs.[9] Defendants relied upon *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

Under the circumstances of the *Holmes* case, the Supreme Court found that plaintiffs in a RICO action must show not only a direct injury but also must show that defendant's conduct was a proximate cause of plaintiffs' injury. The Court stated:

> Here we use "proximate cause" to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause re-

---

al RICO, 18 U.S.C. §§ 1962(b) and (d)); Count XV (violation of Ohio RICO, § 2923.32(A)(3)); and Count XVI (violation of Ohio RICO, § 2923.32(A)(2)). *See* Doc. 134. Further, by order dated September 10, 1998, the Court dismissed Counts VI (intentional breach of special duty) and Count VII (negligent breach of special duty) [Doc. 234].

On November 23, 1998, the Court granted defendants' summary judgment motion as to plaintiffs' federal and state antitrust claims on statute of limitations grounds (Count IV and Count X, respectively) [Doc. 373]. The Court denied the remainder of defendants' summary judgment motions. The Court also dismissed Defendants Council for Tobacco Research, The Tobacco Institute, inc., and Hill & Knowlton as defendants in this case.

Therefore, the three remaining claims in this case are: Count I (federal RICO, 18 U.S.C. § 1962(c) and (d)); Count XI (civil conspiracy); and Count XIV (Ohio RICO, Ohio Rev.Code § 2923.31 *et seq.*).

7. The plaintiffs withdrew, without prejudice, certain other claims.

8. The Court also has made other rulings. The defendants do not seek certification of these questions.

   On September 14, 1998, this Court denied motions by Defendants The Tobacco Council, RJR Nabisco Holdings, and RJR Nabisco, Inc. to dismiss this cause pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction [Doc. 238]. On September 23, 1998, this Court denied the defendants' motion to dismiss this cause under Fed.R.Civ.P. 12(b)(7) for failure to join necessary parties [Docs. 249, 250].

9. Without an objection, plaintiffs sought additional time within which to respond to the motion to dismiss. On March 10, 1998, plaintiffs filed their opposition to plaintiffs' motion to dismiss. On March 20, 1998, defendants replied. Upon the defendants' request, the Court conducted a hearing on the motion to dismiss on July 15, 1998.

flects "ideas of what justice demands, or of what is administratively possible and convenient."

*Id.* at 268, 112 S.Ct. 1311 (citation omitted).

Deciding whether a plaintiff shows proximate injury under the federal RICO law, the Supreme Court found that a party is *generally* required to show a direct injury to have standing. Generally, it is insufficient under RICO to complain of harm "flowing from the misfortunes visited upon [another] person by the defendant's acts." *Id.* The *Holmes* Court found that a plaintiff could not make claim for injuries more directly visited upon third parties. The *Holmes* Court emphasized that others were positioned to make the same claims. It stated: "Although the customers' claims are senior (in recourse to 'customer property') to those of the broker-dealers' general creditors, the causes of their respective injuries are the same...." *Id.* at 271, 112 S.Ct. 1311.[10]

In finding the *Holmes* plaintiff's damages were too remote to allow recovery under federal RICO, the Supreme Court directed consideration of the difficulty the plaintiff has in showing that its damages flowed from the defendant's conduct, the risk of double recovery, and, importantly, whether the defendant's conduct is sufficiently harmful to warrant deterrence. *Id.* at 269, 112 S.Ct. 1311.

When denying the defendants' 12(b)(6) motion to dismiss in the instant case, this Court distinguished federal RICO from state RICO (the Ohio Pattern of Corrupt Activity Act) The Court made this review because the Ohio statute provides for much broader and more liberal standing provisions than its federal counterpart. This Court also found reasons to distinguish the *Holmes* case. First, this Court found that individual beneficiaries were not positioned to make RICO claims and the potential for double recovery was nonexistent. Second, this Court found that,

if believed, defendants' conduct is sufficiently harmful as to warrant deterrence.

On September 24, 1998, defendants filed a motion to certify under or 28 U.S.C. § 1292(b) this Court's September 10, 1998 order denying their motion to dismiss [Doc. 253]. The Court herein decides whether to certify for interlocutory review the September 10, 1998 order denying defendants' motion to dismiss.

### B. Class Certification

On July 10, 1998, Plaintiff Funds filed a motion to certify this case as a class action lawsuit pursuant to Fed.R.Civ.P. 23. [Doc. 153]. On October 20, 1998, this Court entered an order granting plaintiffs' motion to certify this case as a class action [Docs. 309, 310]. In that order, the Court granted plaintiffs' request that a class be certified of approximately 100 other similarly situated health and welfare trusts, all in Ohio.

In certifying the class, the Court found that all class members were similarly situated, and that legal and factual issues common to the proposed class predominate. Specifically, the Court found that common issues of fact as to defendants' alleged wrongful conduct predominated and that plaintiffs' claims were typical of the class members' claims. The Court also found that trial evidence of damages would likely involve plaintiffs' use of epidemiological evidence showing that defendants' purportedly wrongful conduct proximately caused many of plaintiffs' health care expenditures.

On October 28, 1998, defendants also filed a motion seeking to certify the Court's October 20, 1998 class certification order for interlocutory review. Defendants say that the Court should grant intermediate review of class certification. Defendants claim support in a not applicable amendment to Fed. R.Civ.P. 23.[11] Defendants also say this Court erred in certifying this case as a class

---

**10.** In *Holmes*, more directly injured parties had already brought an action complaining of the same conduct. 503 U.S. at 273, 112 S.Ct. 1311.

**11.** Effective December 1, 1998, Subd. (f) is added to Fed.R.Civ.P. 23. That provision reads:

(f) Appeals. A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action

certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

As noted, this provision only becomes effective on December 1, 1998. It has no direct bearing upon the class certification in this case that was granted on October 20, 1998.

action. *See Eddleman v. Jefferson County,* 1996 WL 495013, at *3, 96 F.3d 1448 (6th Cir.1996) ("The district court has broad discretion in certifying class actions, but must exercise the discretion within the framework of Rule 23. *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1029 (6th Cir.1977). When evaluating whether to certify the class, the district court must take the allegations of plaintiffs as true and any doubts as to certification should be resolved in favor of plaintiffs. *Id.*").

The Court now evaluates the defendants' motions to certify this Court's September 10, 1998 order denying defendants' motion to dismiss this case, and the Court's October 20, 1998 order certifying this case as a class action.

## II. Discussion

### A. Standard for Interlocutory Review

■ Title 28 U.S.C. § 1291 sets out the final judgment rule. This rule limits the appellate jurisdiction of United States circuit courts of appeals to final judgments of the district courts. A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The final judgment rule requires the appealing party to bring all claims of error in a single appeal following a final judgment on the merits. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

In 1958, Congress enacted 28 U.S.C. § 1292(b) to allow interlocutory appeals in limited circumstances. When enacting § 1292, Congress was aware of competing considerations. Congress acknowledged that "certainty and dispatch in the completion of judicial business makes piecemeal appeal undesirable." 16 Wright & Miller, et al., supra, § 3929, at 368. Congress also acknowledged that on occasions, the orderly administration of justice

is frustrated by the necessity of a waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point of fact, of law, of substance or procedure, upon which in a realistic way the whole case or defense will turn.

*Id.* (quoting *Hadjipateras v. Pacifica, S.A.,* 290 F.2d 697 (5th Cir.1961)).

■ Interlocutory appeals under § 1292(b) are an exception to the general policy against piecemeal appellate review embodied in the final judgment rule. Section 1292(b) has a narrow scope: "[O]nly 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' " *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 921 F.2d 21, 25 (2nd Cir.1990), *vacated on other grounds,* 937 F.2d 44 (2nd Cir.1991) (citation omitted). "Review under § 1292(b) should be sparingly granted and then only in exceptional cases." *Vitols v. Citizens Banking Co.,* 984 F.2d 168, 170 (6th Cir.1993) (citation omitted).

Appellate review of a district court order is restricted to final decisions to prevent " 'the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequences, but a single controversy.' " *Barnes v. American Tobacco Co., Inc.,* 176 F.R.D. 479, 495 (E.D.Pa. 1997) (quoting *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). The policy is clearly against punctuating ongoing litigation with serial appeals. *Id. See also United States v. Hollywood Motor Car Co., Inc.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982).

Title 28 U.S.C. § 1292(b) sets forth requirements for certification. To grant certification under that provision, the district judge must find that an order involves a controlling question of law about which there is substantial ground for difference of opinion. The district court judge also must find "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

To receive § 1292 certification, the movant must show that they have met the four elements identified by the Sixth Circuit. These are: (1) the question involved must be one of "law"; (2) it must be "controlling"; (3) there must be substantial ground for "difference of opinion" about it; and (4) an immediate ap-

peal must materially advance the ultimate termination of the litigation. *Vitols*, 984 F.2d at 170.

■ In applying the standards of § 1292(b), the Court should use some flexibility and should be guided by considering the probable gains and losses of immediate appeal. 16 Wright & Miller, et al., *supra*, § 3930 at 415–16. To decide whether immediate appeal is favorable, courts should take into account the following considerations: (1) the probabilities of *prompt* reversal, (2) the length of the district court proceedings saved by reversal of a wrong ruling, and (3) the substantiality of the burdens imposed on the parties by a wrong ruling. *Id.* at 416. To decide whether immediate appeal is not favorable, courts should consider (1) the probabilities that the intermediate appeal will require lengthy appellate consideration, (2) whether the court of appeals will affirm the order, (3) whether continued district court proceedings without appeal might moot the issue, (4) the extent to which reversal would not substantially alter the course of district court proceedings, or (5) whether the parties will not be relieved of any significant burden by reversal. *Id.*

■ Generally, when weighing these considerations, courts should recognize that certification under Section 1292(b) "should be sparingly granted and then only in exceptional cases." *Vitols*, 984 F.2d at 170 (citing *Kraus v. Board of County Road Comm'rs*, 364 F.2d 919, 922 (6th Cir.1966)).

B. Application of § 1292(b) to this case.

The defendants in the instant case seek to certify for appellate review two of this Court

orders: the September 10, 1998 order denying defendants' motion to dismiss this cause under Rule 12(b)(6); and the October 20, 1998 order granting plaintiffs' motion to certify this case as a class action under Rule 23. With regard to the September 10, 1998 order, defendants seek certification on two questions:

1. Whether any injuries incurred by the plaintiff health and welfare funds are derivative and too remote to permit recovery as a matter of law.

2. Whether, under the circumstances alleged in the first amended complaint, union health and welfare funds that have paid health care benefits for treatment of allegedly smoking-related diseases have suffered injuries to their "business or property" under the Racketeer Influence Corrupt Organizations Act ("RICO").[12]

With regard to this Court's October 20, 1998 order granting class certification, the defendants seek review of whether a showing of "reliance" precludes class treatment.

In response, plaintiffs argue there is no "controlling issue of law" to support an interlocutory appeal. First, plaintiffs say there is no disagreement between plaintiffs and defendants as to the correct legal standard for determining "remoteness," only disagreement about the application of that standard to the facts of this case.[13] *Professional Serv. Indus., Inc. v. Kimbrell*, 841 F.Supp. 358, 363 (D.Kan.1993) ("Of course, PSI disputes the court's application of the reliance requirement to the facts of this case, but this does not constitute a substantial ground for difference of opinion.").[14]

---

12. Defendants had also sought certification of whether the Plaintiff Funds had suffered antitrust injury and had standing to bring antitrust claims. Because this Court subsequently granted defendants' motion for summary judgment as to plaintiffs' antitrust claims, the request to certify this question is moot.

13. Plaintiffs say that all agree that *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–70, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), controls the issue of standing.

14. Commentary suggests that the language of § 1292 makes a distinction regarding the right to intermediate appeal on legal matters as opposed

to matters involving questions of fact. For instance, Wright & Miller states:

There is indeed no reason to suppose that interlocutory appeals are to be certified for the purpose of inflicting upon courts of appeals an unaccustomed and ill-suited role as factfinders. Even when the question is the supposed question of law whether there are any genuine issues of material fact that preclude summary judgment, ordinarily it seems better to keep courts of appeals aloof from interlocutory embroilment with the factual content of the record.

16 Wright & Miller, et al., *supra*, § 3930 at 427–28 (footnotes omitted).

Second, plaintiffs argue that defendants' standing and "remoteness" arguments are better decided upon the complete record made at trial.

Third, plaintiffs claim that there is no "substantial ground for difference of opinion" as to plaintiffs' claim under the Ohio Pattern of Corrupt Activity Act. Plaintiffs urge that if there is little plausible argument with this Court's allowing the Ohio Pattern of Corrupt Activity Act claim to go forward, it makes little sense to allow interim appeal of this Court's treatment of plaintiffs' federal RICO claim.

As described, the Court reviews the advantages and disadvantages of an immediate appeal. In making this review, the Court examines the posture of the case and whether immediate appeal would further the just disposition of this case. Of primary consideration is whether immediate appeal would be efficient. Central to this consideration of efficiency is whether some of plaintiffs' claims will continue despite any foreseeable resolution on appeal. Courts have less favored immediate appeal where the issues will require a long appellate consideration.

Further, immediate appeal is less favored where reversal on some issues would not substantially alter the course of the district court proceedings, and the parties will not be relieved of any significant burden by reversal. This Court also considers the costs incurred by the parties to date and the cost associated with completing trial of this matter. Courts have not favored immediate appeal when it will result in long delay or when the case is near a long established trial date.

1. § 1292 Certification of the Court's September 10, 1998 order

In seeking certification of the Court's September 10, 1998 order denying defendants' Rule 12(b)(6) motion to dismiss this case, defendants ask for interim review of whether plaintiffs' claims are too remote to allow recovery. After considering defendants' arguments on this issue, the Court concludes that there is not a controlling issue of law involved. Instead of raising an issue of controlling law, it appears that the defendants

seek interim review of how this Court applied established law to the somewhat novel, factual circumstances of this case.

When this Court issued its September 10, 1998 order, the Court reviewed distinct claims by the plaintiffs. The Court allowed plaintiffs' federal RICO and state Pattern of Corrupt Activity claims to go forward.

a. Plaintiffs' Ohio Pattern of Corrupt Activity Claim

■ While somewhat similar to federal RICO, the Ohio Pattern of Corrupt Activity Act has significantly different and more liberal standing provisions. With Ohio Rev. Code § 2923.34, the Ohio General Assembly provided for a civil action for violation of Ohio Rev.Code § 2923.32.[15] In providing for a civil action, the General Assembly addressed who should have standing to bring actions for triple damages and attorney's fees. In pertinent part, § 2923.34(F) provides:

(F) In a civil proceeding under division (B) of this section, any person *directly or indirectly* injured by conduct in violation of section 2923.32 of the Revised Code or a conspiracy to violate that section, ... shall have a cause of action for triple the actual damages he sustained....

Ohio Rev.Code § 2923.34(F) (emphasis added).

By affording a cause of action to any person directly or *indirectly* injured, the Ohio General Assembly departed from the language used by Congress in drafting a federal cause of action under the federal RICO law. Title 18 U.S.C. § 1964 provides in pertinent part:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c).

A cursory review of these two statutory provisions shows that the Ohio General As-

---

**15.** Ohio enacted its version of RICO on June 20, 1985, creating the criminal offense of "engaging in a pattern of corrupt activity." Ohio Rev.Code § 2923.32(B)(1). These statutes took effect on January 1, 1986.

sembly largely patterned the Ohio Pattern of Corrupt Activity Act after the federal cause of action.[16] Yet while similar, the Ohio General Assembly made obvious and significant departures. Most pertinent to the issues here, the Ohio General Assembly stated that persons injured both directly and indirectly by violations of § 2923.32 had standing to bring an action under Ohio's RICO law.

Where a legislature makes a difference from patterned legislation, such change suggests the desire to alter previous understandings. The Ohio Supreme Court recognized this in *State v. Frost,* 57 Ohio St.2d 121, 387 N.E.2d 235 (1979), stating: "It is axiomatic that it will be assumed that the General Assembly has knowledge of prior legislation when it enacts subsequent legislation." *Id.* at 125, 387 N.E.2d 235.

As described in this Court's September 10, 1998 order, the Minnesota Supreme Court reviewed similar language in *State by Humphrey v. Philip Morris Inc.* 551 N.W.2d 490 (1996). There, the Minnesota Supreme Court held that Blue Cross lacked standing to make common law tort claims against tobacco defendants. While finding that Blue Cross lacked standing to make a tort claim, the Minnesota Court explained that "[t]he legislature may, by statute, expand the connection between conduct and injury necessary to permit suit." *Id.* at 495.

In the *Humphrey* case, a state antitrust law provided for a cause of action for "[a]ny person, any governmental body, or the state of Minnesota or any of its subdivisions or agencies, *injured directly or indirectly* by a violation" of the Minnesota antitrust laws. *Id.* (citing to Minn.Stat. § 325D.57 (1994)) (emphasis added). The Court found "that this expansive grant of standing reaches the

[antitrust] injuries suffered by Blue Cross." *Id.* at 496.

The United States Supreme Court also addressed this issue in *California v. ARC America Corp.,* 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). There, four states brought a class actions against cement producers and alleged an antitrust conspiracy to fix cement prices. Although federal antitrust laws seemed to stop indirect purchasers from making antitrust claims, the plaintiff states sought damages under state antitrust laws. The state laws allowed indirect purchasers to recover overcharges passed on to them.

On appeal, after the district and circuit courts found the plaintiffs' claims too indirect, the Supreme Court held that federal law did not preempt state indirect purchaser laws, despite the federal rule limiting federal antitrust recoveries to direct purchasers.[17] The Court found that the individual states had power to give standing under state law to persons not directly injured. The Court stated:

> As construed in *Illinois Brick,* § 4 of the Clayton Act authorizes only direct purchasers to recover monopoly overcharges under federal law. We construed § 4 as not authorizing indirect purchasers to recover under federal law because that would be contrary to the purposes of Congress. But nothing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws.

*Id.* at 490 U.S. at 103, 109 S.Ct. 1661.

In Ohio, the General Assembly has chosen to allow claims by persons injured "directly

---

**16.** *See State v. Thrower,* 62 Ohio App.3d 359, 369, 575 N.E.2d 863 (Ohio App.9th Dist.1989) ("The Ohio RICO statute was based on the [f]ederal RICO statute and statutes passed by other states."). Congress explicitly directed that the RICO statute be "liberally construed to effectuate its remedial purposes." *Russello v. United States,* 464 U.S. 16, 27, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). The Sixth Circuit also recognizes "the broad construction of RICO." *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio,* 900 F.2d 882, 887 (6th Cir.1990). RICO is written "[i]n terms variously described as 'broad' ... 'expansive' ... and 'sweeping'." *County of Oakland v. City of Detroit,* 866 F.2d 839, 847 (6th

Cir.1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3235, 3236, 111 L.Ed.2d 747 (1990) (quoting *Associated Gen. Contractors v. California State Council of Carpenters,* 459 U.S. 519, 529, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 472, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), and *Southaven Land Co., Inc. v. Malone & Hyde, Inc.,* 715 F.2d 1079, 1081 (6th Cir.1983)).

**17.** *See Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968).

or indirectly." Ohio Rev.Code § 2923.34(F). Given the General Assembly's decision to extend standing to persons indirectly injured, this Court concludes that there is no substantial ground for difference as to whether Plaintiff Funds have standing to bring their Ohio Pattern of Corrupt Activity Act claim. The Court finds that defendants cannot plausibly argue that the language used by the General Assembly does not allow the plaintiffs to make a Pattern of Corrupt Activity Act claim.

### b. Plaintiffs' Federal RICO Claims

■ Defendants make a better showing that there are substantial grounds for difference of opinion regarding plaintiffs' federal RICO claim. Reviewing this issue, other courts had similarly denied motions to dismiss. *See National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 1998 WL 732911, 23 F.Supp.2d 321 (E.D.N.Y.1998) (denying defendant tobacco companies' motion to dismiss with respect to RICO and federal common law claims for unjust enrichment-restitution, indemnity, and breach of an assumed duty); *Kentucky Laborers District Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.*, 1998 WL 695299, 24 F.Supp.2d 755 (W.D.Ky.1998) (denying defendant tobacco companies' motion to dismiss with respect to RICO and fraud claims); *New Jersey Carpenters Health Fund v. Philip Morris, Inc.*, 17 F.Supp.2d 324 (D.N.J. 1998) (denying defendant tobacco companies' motion to dismiss with respect to RICO and fraud claims directed at trust funds); *Stationary Engs. Local 39 Health & Welfare Trust Fund v. Philip Morris, Inc.*, No. C–97–01519, 1998 WL 476265 (N.D.Cal. Apr.30, 1998) (denying defendant tobacco companies' motion to dismiss claims with respect to claims for fraud and negligent breach of special duty); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F.Supp.2d 277 (S.D.N.Y.1998) (denying defendant tobacco companies' motion to dismiss with respect to RICO claims and common law claims for fraud and breach of special duty), *appeal granted,* (2nd Cir. July 14, 1998) (No. 98–7944); *West Virginia Laborers' Pension Trust Fund v. Philip Morris, Inc.*, No. 3:97–0708 (S.D.W.Va. Aug. 12, 1998) (denying defendant tobacco companies' motion to dismiss in toto).

In contrast, other courts have dismissed similar RICO actions. *See Texas Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 1998 WL 685364, 21 F.Supp.2d 664 (E.D.Tex. 1998) (granting defendants' motion to dismiss RICO, antitrust, and state common law claims in toto); *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 1998 WL 544305, 17 F.Supp.2d 1170 (D.Or.1998) (same); *Seafarers Welfare Plan v. Philip Morris, Inc.*, 27 F.Supp.2d 623(D.Md.1998) (same); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, No. CIV.A. 97–5344, 1998 WL 212846 (E.D.Pa. Apr.22, 1998) (same); *Southeast Fla. Laborers Dist. Health & Welfare Trust Fund v. Philip Morris, Inc.*, No. 97–8715 CIV, 1998 WL 186878 (S.D.Fla. Apr.13, 1998) (same); cf. *Eastern States Health & Welfare Fund v. Philip Morris, Inc.*, 11 F.Supp.2d 384 (S.D.N.Y.1998) (on motion to remand, incomplete preemption of some state claims).

Upon consideration, the Court concludes that interim review of the September 10, 1998 order as to plaintiffs' standing to bring federal RICO claims will not materially advance the end of this litigation. The defendants can make no plausible argument that this action should not continue on plaintiffs' Ohio Pattern of Corrupt Activity Act claim. Plaintiff Funds will give evidence on their Ohio Pattern of Corrupt Activity Act claim identical to the evidence they will offer in support of their federal RICO claim. Because no plausible argument supports dismissal of the Ohio Pattern of Corrupt Activity Act claim, any interim appeal would only delay the inevitable trial of this case on the Ohio Pattern of Corrupt Activity Act claim.

Apart from defendants' difficulty showing a controlling question of law about which there is substantial ground for difference of opinion, defendants do not show that an immediate appeal from this Court's September 10, 1998 order denying defendants' motion to dismiss would materially advance the ultimate termination of the litigation.

This matter is set for trial in February 1999. Any intermediate appeal of this Court's September 10, 1998 order and October 20, 1998 order will likely not have been

briefed much less decided by February 1998. After the expenditure of a huge amount of resources, this case nears trial.[18] A complete record will be available for any review before the Court of Appeals could decide an intermediate appeal.

### 2. § 1292 Certification of Court's October 20, 1998 order

Defendants also seek certification from this Court's October 20, 1998 order granting plaintiffs' motion to certify this case as a class action.

In this Court's October 20, 1998 order, the Court found Plaintiff Funds met the requirements of Fed.R.Civ.P. 23(b)(3) because common issues of law or fact predominate over individual issues. The Court found that plaintiffs' claims arose out of the defendants' alleged common course of misconduct, and that each trust fund class member suffered injury under the same course of conduct and in the same manner. The Court found that administering this case as a class action suit is a superior method of managing and resolving this dispute.

In their memorandum opposing plaintiffs' motion for class certification, the defendants made no plausible argument that the class was not sufficiently numerous to support class certification. The defendants also did not make any plausible argument that plaintiffs' representation would not be adequate. Instead, defendants said that the named plaintiffs failed to show commonality with the class and the typicality of their claims.

■ Under Fed.R.Civ.P. 23(a)(2), a plaintiff must show "questions of law or fact common to the class." The Supreme Court has defined commonality as requiring that "a class representative ... be part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *East Texas Motor Freight*

*Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).

■ A plaintiff generally will satisfy the commonality requirement by showing a "common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). In this regard, at least one question of law or fact must be common to the class. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 2312 (1998). A class action will not be defeated solely because of some factual variations among class members' grievances. *See Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

■ In *Sprague*, the Sixth Circuit described the typicality requirement as follows:

Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague*, 133 F.3d at 399 (citing 1 Newberg and Conte, *supra*, § 3–13, at 3–75, 76 (internal quotations omitted)).[19]

■ In deciding whether the named plaintiffs' claims were typical, this Court found defendants' conduct as collective in nature. In challenging the plaintiffs' claims of typicality, defendants argued that Plaintiff Funds must show reliance in the RICO and Ohio Corrupt Activity Act claims.

The Court found that reliance was not an element of plaintiffs' claim under the Ohio Pattern of Corrupt Activity Act. However,

---

**18.** As of November 25, 1998, the parties had filed 381 separate pleadings in this matter.

**19.** *See also Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (to have standing to sue as a class representative, it is essential that plaintiff

be a party of that class which means he must possess the same interest and suffer the same injury shared by all members of class he represents); *Senter*, 532 F.2d at 523–24 (to be typical, a representative's claim need not always involve the same facts or law provided there is a common element of fact or law).

the Court found that reliance was an element of plaintiffs' federal RICO claim to the extent they premised it on mail [20] or wire fraud.[21] *See Central Distributors of Beer, Inc. v. Conn,* 5 F.3d 181 (6th Cir.1993), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994); *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 389–90 (6th Cir.1996). After finding that the plaintiffs here need to show reliance to prove *mail and wire* fraud as predicate RICO acts, this Court concluded that plaintiffs' claims were typical.

Subsequent to the entry of this Court's October 20, 1998 order certifying this case as a class action, the issue of reliance became moot. On November 16, 1998, Plaintiff Funds stated their intention to dismiss their RICO claims premised on mail and wire fraud under 28 U.S.C. §§ 1341, 1343.[22] Having dismissed claims based upon predicate acts of mail and wire fraud, the plaintiffs' remaining federal RICO claim is predicated on the "immoral purposes" provision of 18 U.S.C. § 1461. This provision of § 1461 does not require a showing of reliance.

Defendants contend that the Court's ruling in the October 20, 1998 order involves a controlling question of law about which there is substantial ground for difference of opinion, and the defendants urge that an immediate appeal from this order may materially advance the end of the litigation. 28 U.S.C. § 1292(b).

Because class certification is discretionary and procedural, interim review is usually not appropriate. Further, because class certification orders are discretionary, such orders do not usually involve a controlling question of law. *Link v. Mercedes–Benz of North Am., Inc.,* 550 F.2d 860, 862 (3rd Cir.), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). To be controlling, there must be "special factors which take it outside the ambit of the general rule." *Id.*

In applying the "controlling question of law" language of § 1292(b), the court in *In re Cement Antitrust Litigation,* 673 F.2d 1020

(9th Cir.1981), *aff'd,* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983) held: "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Id.* at 1026 (citation omitted). *See also Castano v. American Tobacco Co.,* 162 F.R.D. 112, 116 (E.D.La.1995).

While the class certification order at issue may involve a "controlling" issue of law, the Court must still determine whether certification involves issues about which there is substantial ground for difference of opinion and immediate appeal may materially advance the end of the litigation.

In this case, immediate appeal would significantly retard the end of this litigation. While significantly delaying the ultimate resolution of this litigation, immediate appeal would do little to alter litigation expense and presentations. This would be the case even if defendants succeed in having the Sixth Circuit accept this appeal, or if Sixth Circuit found this Court had abused its discretion when certifying this case for class treatment.

Here, the named plaintiffs will seek to prove their damages and absent class members' damages through expert testimony using a statistical model. With this statistical model, plaintiffs propose a six-step process. First, plaintiffs will obtain "total amount of health care expenditures" for each of the 114 class-members. This information was obtained from I.R.S. Form 5500 filings.[23] Then, plaintiffs will seek to place each of the 114 class members into 8 occupational categories identified from the National Health Interview Survey, a very large survey that determined "smoking prevalence" by occupation.

Plaintiffs next propose to determine a smoking attributable fraction for 19 diseases that the Surgeon General has attributed in part to smoking. This involves a calculation of what percentage of a particular disease is caused by cigarette smoking.

---

**20.** *See* 18 U.S.C. § 1341

**21.** *See* 18 U.S.C. § 1343.

**22.** *See* Doc. 364, Plaintiffs' Memorandum Regarding Ability to Prove Aggregate Class–Wide damages, at 28.

**23.** Each of the 114 class member Union Trust Funds reports their total yearly health-care expenditures to the I.R.S.

Plaintiffs say they then will apply the smoking attributable fraction calculations to both named and absent class members. As to absent class members, this involves applying the smoking attributable fraction to the health care expenditures made by each fund.

The health care expenditures attributed to smoking are then adjusted by disease, age, gender, and employment status. Lastly, plaintiffs propose to apply the composite smoking attributable fraction against total expenditures of each fund.

It appears that use of a formula to compute class-wide damages is an accepted approach if sufficiently reliable to justly determine the defendants' liability. *See generally* 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions §§ 10.02, 10.03, 10.05 (1992) ("One acknowledged occasion for aggregate proof of monetary relief is the situation in which monetary liability can be demonstrated by a mathematical computation based upon a formula common to an identified class." *Id.* at § 10.03.).

Plaintiffs will seek to establish damages using the described computation. Because the proposed damage model will incorporate computations currently available to the parties, certification of the October 20, 1998 order would not significantly change the discovery and presentation of trial evidence. This would be true even the Sixth Circuit found this Court had abused its discretion in certifying this case as a class action suit.

Unless convinced otherwise, the Court intends to trifurcate the trial of this case. Under the Court's current plan, the plaintiffs would first establish liability under federal RICO, the Ohio Corrupt Activity Act, or for civil conspiracy. While Plaintiff Funds would give some general evidence of damages flowing from the defendants alleged misconduct, the first phase of the trial would not focus on damages.

If the plaintiffs obtain a favorable verdict on the liability phase, the case will advance to Phase Two. In Phase Two, the plaintiffs and the defendants would put on evidence regarding the damages allegedly sustained by only the named plaintiffs. This damage evidence would be presented to the same jury.

If the plaintiffs obtain a favorable verdict on both the liability phase and the named plaintiff damage phase, the case will advance to Phase Three. In Phase Three, the plaintiffs and the defendants would put on evidence regarding the damages allegedly sustained by the absent class members. Again, the same jury would receive the evidence and render a verdict.

Using this procedure, the Court seeks to separate the jury's determination of named plaintiffs' damages and absent class members' damages for individualized review. If upon later appellate review the Sixth Circuit found this Court had abused its discretion in certifying the case as a class action, such a finding would not stop use of the jury's conclusions regarding the named plaintiffs' damages (Phase Two).

In reviewing whether immediate appellate review would materially advance the end of this case, the Court considers the probability of *prompt* review, the length of the district court proceedings saved by reversal of a wrong ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling. The Court also considers whether reversal would not substantially alter the course of district court proceedings, or that the parties will not be relieved of any significant burden by reversal. 16 Wright & Miller, et al., § 3930 at 416.

Applying these considerations, the Court finds little support to certify its October 20, 1998 order for interlocutory review. Because Plaintiff Funds intend to rely upon a damage model, and because the broad majority of the trial of this case will involve review of the defendants' conduct, the Court finds that the present course of this district court's proceedings will change little, whether or not the Court of Appeal upholds class certification.[24]

---

**24.** Defendants contest plaintiffs' damage model. Defendants say the model cannot be used to show either the named plaintiffs' damages or the damages of absent class members.

No matter how this issue is decided, the plaintiffs have shown no other method for establishing damages. However this Court decides whether plaintiffs' damage model may be offered, the preparation and presentation of this case will remain common for all plaintiffs.

As described, the parties have already expended large resources to prepare for a February 1999 trial date. While much final work remains, a stay and immediate appeal, even if successful, will not stop the expense of a proportionally large amount of judicial or party resources. By contrast, a stay would greatly delay resolution of this dispute on the full record available after trial. *See German by German v. Federal Home Loan Mortg. Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y.1995) ("Certification is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation. It is not intended as a vehicle to provide early review of difficult rulings in hard cases." (citations omitted)).

Given the caseload facing the Sixth Circuit, it is unlikely that Court would decide this case within the next six months. *Klinghoffer*, 921 F.2d at 24 ("The legislative history of section 1292(b) clearly shows that this discretion encompasses denial of a properly certified appeal—which by definition includes a "controlling question of law"—for any reason, including docket congestion.") (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351(1978)).

Moreover, the Court finds little likelihood that intermediate review of the standing or the "business or property" questions will resolve this case. As described, the determination of standing is completely different, and more liberal to the plaintiffs under the Ohio Corrupt Activity Act. It makes scant sense to stop the resolution of this case to await an appellate decision on the federal RICO claim when the same evidence and same damages will be presented to a jury in an Ohio Corrupt Activity Act claim.

Simply stated, this is not the kind of case about which 28 U.S.C. § 1292(b) is directed. Intermediate review will tremendously delay resolution of this case. Given the complexity of this case, review is better had upon a complete record, made at completion of a trial. The Court finds no good cause to delay the resolution of merits of this case.

### III. Conclusion

For the reasons above, the Court denies defendants' motions to certify this action for intermediate appeal on a less than complete record. Further, the Court denies the defendants' motion to stay this action pending such appeal.

IT IS SO ORDERED.

### ORDER

The Court has entered its opinion regarding the defendants' motions to certify the Court's September 10, 1998 and October 20, 1998 orders for interlocutory review pursuant to 28 U.S.C. § 1292(b) [Docs. 253, 334 ]. For the reasons therein, the Court denies defendants' motions for intermediate appeal on a less than complete record. Further, the Court denies the defendants' motion to stay this action pending such appeal.

IT IS SO ORDERED.