845 F.2d 326
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles S. LIBERIS, David L. Fleming, and Charles S.
Liberis, P.A., Plaintiffs- Appellants,
v.
D. Broward CRAIG, Trustee-in-Bankruptcy for David A.
Crabtree, Defendant- Appellee.
 No. 87-5321.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Plaintiffs appeal the district court's order dismissing their appeal from an order of the bankruptcy court awarding the defendant attorneys' fees and expenses and denying their motion for recusal. This marks the second occasion in which this case has come before this court. In the previous proceeding, the bankruptcy court found the plaintiffs in civil contempt for intentionally disobeying a bankruptcy court order. Plaintiffs unsuccessfully appealed the contempt finding to the district court and to this court. On remand, defendant filed a motion for attorneys' fees and expenses incurred as a result of the contempt proceeding and the subsequent appeals. The plaintiffs filed a motion for recusal, alleging that the bankruptcy judge who had issued the contempt order was biased and, therefore, should recuse himself from hearing the motion for attorneys' fees. The bankruptcy judge denied the motion for recusal and, in a subsequent order, granted the defendant's request for attorneys' fees and expenses. The plaintiffs appealed to the district court which affirmed the award of fees and the denial of plaintiffs' motion for recusal. For the following reasons, we affirm.
 
 I.
 
 2
 This case is the most recent wave in a flood of federal litigation resulting from the collapse of the financial empire of C.H. Butcher, Jr. The instant controversy was sparked by a dispute over a $1.7 million fund located in a Florida bank. Ownership to the fund was claimed by the trustee for the bankrupt Butcher estate and by D. Broward Craig, the Trustee-in-Bankruptcy for the David A. Crabtree estate (Trustee). On December 30, 1983, the trustees filed a joint complaint in the United States Bankruptcy Court for the Eastern District of Tennessee, claiming that the fund constituted property of the Butcher and Crabtree bankruptcy estates. On Friday, February 10, 1984, the bankruptcy court entered a judgment ordering that the fund be divided equally between the two bankrupt estates. Immediately following the entry of the order, the funds were transferred by wire to the trustees' accounts in Tennessee.
 
 
 3
 The following Monday, February 13, 1984, the Florida Investment Leasing Company, Inc. (FILCO), filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Northern District of Florida. FILCO also filed a complaint claiming title to the $1.7 million fund and sought a temporary restraining order prohibiting the transfer of the fund. Essentially, FILCO claimed that Crabtree had fraudulently diverted the $1.7 million while serving as president of the company. The Butcher and Crabtree trustees were named as defendants in the FILCO complaint. The petition and complaint was filed on behalf of FILCO by the Florida law firm of Liberis & Fleming. On February 21, 1984, an ex parte petition for relief was filed in the United States Bankruptcy Court for the Eastern District of Tennessee requesting relief from the automatic stay to permit the suit against the trustees to proceed in Florida. FILCO was represented by its Knoxville counsel, Sharon Lee. On February 22, 1984, Bankruptcy Judge Bare denied the motion and also denied the oral request of FILCO's counsel for a temporary restraining order prohibiting the trustees from disbursing the $1.7 million. Judge Bare ruled that the proper procedure for contesting title to the $1.7 million and for obtaining temporary injunctive relief would be to file an adversary proceeding against the trustees in the United States District Court for the Eastern District of Tennessee.
 
 
 4
 Immediately after the hearing concluded, Ms. Lee called FILCO's principal counsel, Charles Liberis, in Florida and informed him of the result. Later that same day, Charles Liberis and his partner, David Fleming (plaintiffs), appeared before the United States Bankruptcy Court for the Northern District of Florida seeking the same relief which had just been denied by Judge Bare in Tennessee. At approximately 10 p.m., the federal bankruptcy court in Florida entered an order lifting the automatic stay and issued a temporary restraining order against the trustees prohibiting them from disbursing the fund.
 
 
 5
 On February 29, 1984, upon the joint motion of the Butcher and Crabtree trustees, the federal bankruptcy court in Tennessee issued an order to show cause why Liberis and Fleming should not be held in contempt, and set a hearing for March 2, 1984, in Knoxville. On the same day, Liberis filed a motion with the federal bankruptcy court in Florida to enjoin the trustees from proceeding on the order to show cause on March 2, 1984. Following the hearing before the bankruptcy court in Tennessee, Judge Bare issued a written order finding Liberis and Fleming in contempt for engaging in "unlawful, illegal, deliberate, and intentional violations" of the February 22, 1984 order, denying relief from the stay, and of violating the automatic stay itself. In re Crabtree, No. 3-83-01116, Order and Memorandum No. 61, slip op. at 5 (Bankr.E.D.Tenn. March 5, 1984). The contempt order issued by Judge Bare also provided that Liberis and Fleming would pay all costs and expenses, including attorneys' fees incurred by the trustees in response to the legal actions taken by Liberis after February 22, 1984. Slip op. at 6. The bankruptcy judge also ordered Liberis to dismiss the adversary proceeding against the trustees in Florida and to dissolve the injunction against the trustees. Liberis and Fleming appealed the bankruptcy court's order to the District Court for the Eastern District of Tennessee. The district court engaged in a de novo review of the record and found no material facts in dispute. Accordingly, the district court entered an order affirming the bankruptcy court's finding of civil contempt. In the memorandum which accompanied his order, District Judge Hull stated:
 
 
 6
 Appellants clearly violated an order of the Tennessee bankruptcy court, which denied the motions for relief from the stay. Purposefully to avoid this order, appellants sought collateral relief from the Florida bankruptcy court. The proper course would have been for appellants to file in the Tennessee bankruptcy court a motion for reconsideration or to appeal the court's order. See generally Maness v. Meyers, 419 U.S. 449, 458-460 (1975); McComb v. Jacksonville Paper Co., 336 U.S. 187, 191-193 (1949). A party may be held in civil contempt of court for violating a specific and definite order of the court of which the party has knowledge. In re Lohnes, 26 Bankr. 593, 596 (Bankr.D.Conn.1983). Appellants had knowledge of the court's order denying their motions for relief from the stay and in violation of this order sought relief collaterally rather than following proper procedure. Thus, appellants properly were found in civil contempt.
 
 
 7
 Liberis v. Craig, Civ. 3-84-381, Memorandum, slip op. at 4-5 (E.D.Tenn. August 9, 1984).
 
 
 8
 Liberis appealed the August 9, 1984, order of the district court to this court. On June 7, 1985, this court issued an unpublished per curiam opinion in which we affirmed the ruling of the district court. In the penultimate paragraph of that opinion, we stated:
 
 
 9
 Finally, appellants suggest that they legitimately and reasonably felt that the court in Florida could provide them with the same relief denied by the court in Tennessee because federal bankruptcy courts are individual courts and not part of a national system. We disagree. It is elementary that federal courts are part of a federal system and not individual entities free to ignore the rulings by other federal courts. Appellants, attorneys-at-law, know or should have known this as a matter of course. Given their positions as attorneys, appellants can offer no justification for their actions.
 
 
 10
 Liberis v. Craig, No. 84-5842, slip op. at 6 (6th Cir. June 7, 1985). Liberis subsequently made a motion for rehearing which was denied.
 
 
 11
 On August 16, 1985, trustee Craig filed a motion in the Bankruptcy Court for the Eastern District of Tennessee seeking the taxation of costs and expenses against Liberis and Fleming. On September 5, 1985, Liberis filed a motion and affidavit with the bankruptcy court requesting that Bankruptcy Judge Bare recuse himself from the case. In an affidavit attached to the motion, Liberis swore, "I believe in good faith that Judge Bare is prejudiced and biased against me and my law firm because of the perceived link between myself and Mr. Crabtree and Mr. Butcher." On November 1, 1985, Bankruptcy Judge Bare issued a memorandum and order in which the motion for recusal was denied. An evidentiary hearing on the request for attorneys' fees was held before Judge Bare on February 25, 1986. On March 26, 1986, Judge Bare issued an order awarding a total of $36,984.69 in legal fees and expenses to the trustee. The award included the fees incurred by the trustee in defending the contempt order on appeal before the district court and before this court. In re Crabtree, No. 3-83-0116 Memorandum (Bankr.E.D.Tenn. March 26, 1986).
 
 
 12
 Liberis appealed the bankruptcy court's orders denying recusal and awarding legal fees and expenses. On February 3, 1987, District Judge Jarvis entered an order affirming both the order denying plaintiffs' recusal motion and the order awarding fees to the trustee. Liberis v. Craig, No. 3-86-332 (E.D.Tenn. Feb. 3, 1987). In a thorough and well-reasoned opinion, the district court first found that the bankruptcy judge did not err in refusing to recuse himself. Specifically, the court noted that the Liberis affidavit was conclusory in nature and did not state any facts to support the opinion of Liberis that Bankruptcy Judge Bare was biased against him. Therefore, the district court found that Judge Bare had properly denied the motion for recusal. With respect to the issue of attorneys' fees, the district court ruled that it was entirely appropriate for Judge Bare to award to the trustee the cost for bringing the initial contempt motion and defending the original contempt order on appeal. Therefore, the award of attorneys' fees was affirmed and the appeal was dismissed.
 
 II.
 
 13
 Plaintiffs raise two arguments on appeal before this court. We address each issue seriatim.
 
 A. Denial of the Recusal Motion
 
 14
 Plaintiffs contend that Bankruptcy Judge Bare should have recused himself from ruling on the trustee's motion for attorneys' fees since Judge Bare was the same judge who had initially found plaintiffs in contempt of court. Plaintiffs contend that an attorney who has been found to be in contempt is entitled to have the sanctions for contempt determined by a judge other than the one who cited him. Under the circumstances here, we find this argument without merit.
 
 
 15
 Title 28 U.S.C. Sec. 144 provides in pertinent part:
 
 
 16
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 
 
 17
 Title 28 U.S.C. Sec. 455 provides in pertinent part:
 
 
 18
 (a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 
 
 19
 (b) He shall also disqualify himself in the following circumstances: (1) where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....
 
 
 20
 It is well settled that sections 144 and 455 must be read in pari materia. United States v. Story, 716 F.2d 1088, 1091 (6th Cir.1983); Cleveland v. Krupansky, 619 F.2d 576, 578 (6th Cir.), cert. denied, 449 U.S. 834 (1980). The standard for recusal requires the facts asserted to be "such as would convince a reasonable man that a bias exists." United States v. Story, 716 F.2d at 1090.
 
 
 21
 Recusal is not mandatory upon the filing of an affidavit stating a good faith belief regarding the judge's bias. Rather, the affidavit must be "sufficient." 28 U.S.C. Sec. 144. In Cleveland v. Krupansky, the Sixth Circuit held that affidavits that are " 'assertions merely of a conclusionary nature are not enough nor are opinions or rumors' ". 619 F.2d at 578 (quoting United States v. Haldeman, 559 F.2d 31, 131 (D.C. Cir.1976), cert. denied sub nom. Ehrlichman v. United States, 431 U.S. 933 (1977)). Similarly, in United States v. Story, the court stated: "The facts and reasons set out in the affidavit 'must give fair and adequate support to the charge of a bent of mind that may prevent or impede impartiality of judgment.' " 716 F.2d at 1090 (citations omitted).
 
 
 22
 Moreover, judicial disqualification under sections 144 and 455 must be predicated upon extrajudicial conduct rather than upon judicial conduct. Demjanjuk v. Petrovsky, 776 F.2d 571 (6th Cir.1985), cert. denied, 475 U.S. 1016 (1986); United States v. Story, 619 F.2d at 1091; Cleveland v. Krupansky, 619 F.2d at 578. The judge's impressions of perceptions based upon information gained during the trial cannot be the basis of an allegation of bias. In re M. Ibrahim Khan, P.S.C., 751 F.2d 162 (6th Cir.1984); United States v. Porter, 701 F.2d 1158 (6th Cir.), cert. denied, 464 U.S. 1007 (1983).
 
 
 23
 Plaintiffs have asserted no facts which would lead a reasonable person to doubt the impartiality of Judge Bare. The Liberis affidavit was speculative, and Liberis did not allege one extrajudicial incident which would give the appearance of bias or warrant recusal. Moreover, a judge need not disqualify himself from imposing sanctions for contempt unless he has become so "personally embroiled" with counsel so as to be unfit to sit in judgment. Farmer v. Strickland, 652 F.2d 427, 438 (5th Cir.1981), cert. denied, 455 U.S. 944 (1982) (quoting Mayberry v. Pennsylvania, 400 U.S. 455, 465 (1971)). In Farmer, the Fifth Circuit upheld the sentence for counsel's criminal contempt, although it was made by the judge who had held him in contempt for insulting, sarcastic, and disrespectful behavior to the court. The court noted the Supreme Court's recognition of the principle that, even in criminal cases, "not every attack on a judge ... disqualifies him from sitting." Rather, the attack must be personal and inflamatory. 652 F.2d at 438 (citing Mayberry, 400 U.S. 455 (1971)). In the instant case, plaintiffs' contumacious actions were not insulting nor were they personally directed at Judge Bare. The contempt certainly did not sink "to the level of personal vilification and scurrilous attacks on the judge so as to disqualify him from pronouncing sentence on the contemnor." Farmer, 652 F.2d at 439. Thus, we find that plaintiffs have failed to allege any facts which would indicate that Judge Bare was biased or incapable of reaching an impartial decision. Moreover, we note that the district court conducted a de novo review of the contempt order and the imposition of sanctions. Plaintiffs do not allege that either District Judge Hull or District Judge Jarvis were biased against them. Accordingly, we uphold the district court's order affirming the order of the bankruptcy court denying the plaintiffs' motion for recusal.
 
 B. The Award of Costs and Attorneys' Fees
 
 24
 This court has already upheld the initial order of the bankruptcy court finding plaintiffs in civil contempt for wilfully disobeying the order of the bankruptcy court and the provisions of the automatic stay. We found that the plaintiffs could offer no justification for their actions in attempting to circumvent the order of the bankruptcy court. This finding is res judicata as to those questions and will not be reconsidered. Therefore, the only question before us is whether the bankruptcy court abused its discretion in determining the amount of legal fees and expenses awarded to the trustee. Apparently, plaintiffs concede that the trustee was entitled to recover costs associated with bringing the initial contempt motion against the plaintiffs before the bankruptcy court. Plaintiffs, however, contend that the trustee should not be allowed to recover any of the costs incurred as a result of defending plaintiffs' subsequent appeals of the contempt order before the district court and before this court. We disagree.
 
 
 25
 Under the "American Rule," attorneys' fees are generally not recoverable by the prevailing litigant in a federal civil action absent a specific statutory grant of authority for the award of fees. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975). A well recognized exception to this rule, however, exists by virtue of the inherent power of a court to enforce its own orders. Courts have inherent authority to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys' fees. Cook v. Ochsner Foundation Hospital, 559 F.2d 270 (5th Cir.1977). Thus, attorneys' fees may be awarded to the prevailing party for the "wilfull disobedience of a court order ... as part of the fine to be levied on the defendant." Alyeska, 421 U.S. at 258.
 
 
 26
 The determination of assessable items of cost in civil contempt cases is within the discretion of the court whose dignity has been offended and it is no abuse of discretion to impose as a penalty the expenses incurred in defending the propriety of the original imposition of sanctions in the trial court. See Cook, 559 F.2d at 272; Crane v. Gas Screw Happy Pappy, 367 F.2d 771 (7th Cir.1966), cert. denied sub nom. Borrowdale v. Reuland, 386 U.S. 959 (1967); Schauffler v. United Association of Journeymen & Apprentices, 246 F.2d 867, 870 (3d Cir.1957).
 
 
 27
 In Schauffler, a local union and two union officers were held in contempt for violation of an injunction against work stoppages. The United States Court of Appeals for the Third Circuit held that the district court could award the Regional Director of the National Labor Relations Board litigation expenses for the prosecution of the contempt cases both in the district court and on appeal. The Schauffler court stated:
 
 
 28
 Because it was the order of the district court which was violated, the court may assess costs of litigation in the contempt proceedings regardless of the court in which the expenses were incurred.
 
 
 29
 246 F.2d at 870 (citing Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 428 (1923) (charging contemnor with expenses incurred in defending suit brought by contemnor in violation of another court's decree) ).
 
 
 30
 In Crane v. Gas Screw Happy Pappy, the appellant was held in civil contempt for refusing to comply with the district court's order that certain property be returned to the appellee. The United States Court of Appeals for the Seventh Circuit affirmed the district court's finding of contempt and assessed against appellant the costs of the appeal:
 
 
 31
 The flagrant and contumacious character of the appellant's defiance of the court's orders makes it appropriate that appellee be reimbursed for items of expenses necessarily incurred on appeal for the court in defending the adjudication of the District Court.
 
 
 32
 367 F.2d at 775 (citations omitted).
 
 
 33
 In awarding the trustee attorneys' fees and expenses incurred on appeal, the bankruptcy court relied in part upon Tamari v. Bache & Co. (Lebanon), S.A.L., 729 F.2d 469 (7th Cir.1984), a case involving a statutory exception to the American Rule. In Tamari, the Court of Appeals for the Seventh Circuit awarded appellate expenses as part of sanctions under Fed.R.Civ.P. 37(b), for the failure to appear for court ordered discovery depositions. The Tamari court stated:
 
 
 34
 We conclude that appellate expenses to Bache is consistent with the mandate of Rule 37(b). The rule awards expenses "caused by the failure" of the disobedient party to comply with a court order. Bache's appellate costs essentially were caused by the Tamari's and the Firm's failure to comply with the court's original deposition deadline. When the Firm chose to appeal the court's imposition of the Rule 37(b) sanction, it caused Bache to incur additional expenses in order to defend the court's sanction.
 
 
 35
 729 F.2d at 475 (citation omitted).
 
 
 36
 The reasoning of the court in Tamari applies with equal force in the present case. Plaintiffs' defiance of the order of the bankruptcy court caused the trustee of the Crabtree estate to incur expenses in bringing the violation to the attention of the court. Plaintiffs' unsuccessful appeals of the civil contempt order forced the trustee to incur expenses in defending the court's order. The trustee's appellate expenses stemmed directly from plaintiffs' intentional disregard of the initial order of the bankruptcy court.
 
 
 37
 Plaintiffs attempt to distinguish Tamari and other cases on the basis that they involve statutory exceptions to the American Rule, whereas, in the instant case, the bankruptcy court relied on its inherent judicial authority to impose attorneys' fees as a sanction for civil contempt. We find no principled basis for distinguishing between common law and statutory exceptions to the American Rule. Regardless of the source of the exception, fees and expenses incurred on appeal are allowable. Therefore, in the instant case, we find no abuse of authority on the part of the bankruptcy judge in awarding legal fees and expenses incurred in defending against plaintiffs' unsuccessful appeals of the contempt order to the district court and to this court.
 
 
 38
 Plaintiffs claim that they purged themselves of contempt shortly after the bankruptcy court's contempt order was issued on January 25, 1984, by dismissing their action which had been pending before the Florida bankruptcy court. Plaintiffs contend that they cannot be held liable for any costs which were incurred by the trustee subsequent to the cessation of their contumacious conduct. In support of their argument, plaintiffs cite to the decision of the Court of Appeals for the Fifth Circuit in Cook v. Ochsner Foundation Hospital, 559 F.2d 270, 272 (5th Cir.1977):
 
 
 39
 The theory for allowing attorneys' fees for civil contempt is that civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.
 
 
 40
 Plaintiffs argue that the award of costs incurred on appeal of the contempt order could not be justified as a "sanction to enforce compliance" since plaintiffs had already complied with the order by discontinuing their suit in Florida. Moreover, plaintiffs claim that the trustee was not directly injured by their contumacious conduct. Thus, plaintiffs conclude that the American Rule applies to the fees incurred in connection with defending the contempt finding on appeal. We disagree.
 
 
 41
 The paragraph in Cook v. Ochsner, from which the foregoing quotation was taken, also contains the following language:
 
 
 42
 Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees.
 
 
 43
 559 F.2d at 272. In the instant case, there is no question that the bankruptcy court had the authority to award attorneys' fees against the plaintiffs to compensate the trustee for bringing plaintiffs' contempt to the court's attention. Subsequent to the finding of civil contempt by the bankruptcy court, the trustee was forced to defend plaintiffs' challenges to the contempt order before the district court and then on appeal before this court. As previously noted, the costs associated with these appeals were a direct result of the plaintiffs' initial contumacious conduct. The trustee was forced to incur these costs to defend the contempt order on appeal, regardless of whether or not the actual contumacious conduct which had given rise to the contempt order had ceased. Therefore, we find that the bankruptcy judge did not abuse his discretion by awarding attorneys' fees and expenses incurred by the trustees as a result of the plaintiffs' unsuccessful appeals of the orders holding them in contempt.
 
 
 44
 For the foregoing reasons, the judgment of the district court below is AFFIRMED.