RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18b0003p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

In re: NICOLE GAS PRODUCTION, LTD.,

*Debtor*.

JAMES A. LOWE (15-8053); CURTLAND H. CAFFEY,
S. BREWSTER RANDALL II, and ROBERT C. SANDERS
(15-8055),

*Appellants*,

*v.*

FREDERICK L. RANSIER, Trustee,

*Appellee*.

Nos. 15-8053/8055

On Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Columbus.
No. 09-52887—John E. Hoffman, Judge.

Argued: May 9, 2017

Decided and Filed: March 13, 2018

Before: DELK, HARRISON, and OPPERMAN, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:** Rick L. Ashton, ALLEN KUEHNLE STOVALL & NEUMAN, LLP, Columbus, Ohio, for Appellant James A. Lowe. Reginald W. Jackson, VORYS, SATER, SEYMOUR & PEASE, LLP, Columbus, Ohio, for Appellee. Robert C. Sanders, Upper Marlboro, Maryland, pro se. **ON BRIEF:** Rick L. Ashton, James A. Coutinho, ALLEN KUEHNLE STOVALL & NEUMAN, LLP, Columbus, Ohio, for Appellant James A. Lowe. Reginald W. Jackson, Brenda K. Bowers, VORYS, SATER, SEYMOUR & PEASE, LLP, Columbus, Ohio, for Appellee. Robert C. Sanders, Upper Marlboro, Maryland, S. Brewster Randall II, Columbus, Ohio, Curtland H. Caffey, Columbus, Ohio, pro se.

---

## OPINION

---

DANIEL S. OPPERMAN, Chief Bankruptcy Appellate Panel Judge. The Bankruptcy Court in the underlying case held Appellants in contempt for conduct that it found constituted an impermissible exercise of control over property of the bankruptcy estate. A Fee Order followed the Contempt Order and awarded Appellee fees and expenses of $91,068.00 as a sanction for Appellants' conduct. Appellants appealed the Contempt Order and the opinion regarding same and the Fee Order and opinion regarding same. For the reasons stated below, the Panel AFFIRMS those orders and opinions.

### ISSUES ON APPEAL

1. Whether the Bankruptcy Court erred in entering the Contempt Order based on its determination that the claims Appellants pursued under the OCPA were property of Debtor's estate.

2. Whether the Court erred when it awarded Appellee fees and expenses totaling $91,068.00 as a sanction for Appellants' contempt.

### JURISDICTION AND STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (quotation marks and citation omitted). The orders at issue in this appeal are final and none of the parties to this appeal challenge the Panel's jurisdiction to hear it.

#### 1. Standard and Method of Review Regarding the Contempt Order

Reviewing the Contempt Order and opinion accompanying it requires a three-step analysis. The first step is to determine whether Freddie Fulson, the indirect equity owner of the Debtor, had an individual claim under the OCPA. The Bankruptcy Court held that Fulson did

not have his own claim, under the OCPA, for damage to the value of his interest in Debtor. That decision involves interpretation of a statute and the Panel reviews it *de novo*. *TranSouth Fin. Corp. v. Sharon* (*In re Sharon*), 234 B.R. 676, 679 (B.A.P. 6th Cir. 1999).

The second step is to determine whether the claims against the Columbia Gas Entities belonged to Debtor's estate. According to the Bankruptcy Court, Debtor had the exclusive right to prosecute those claims and those claims became estate property when Debtor filed bankruptcy. Thus, the Court held that Fulson violated the automatic stay by appropriating estate property when he pursued the claims in state court. The determination of whether property belongs to the estate is reviewed *de novo*. *Kitchen v. Boyd* (*In re Newpower*), 233 F.3d 922, 927 (6th Cir. 2000). The determination of whether conduct violates the automatic stay also is reviewed *de novo*. *Slabicki v. Gleason* (*In re Slabicki*), 466 B.R. 572, 577 (B.A.P. 1st Cir. 2012).

The third step is to determine whether the Bankruptcy Court's holding of contempt was appropriate. The Panel reviews that decision for abuse of discretion. *Long Term Care Mgmt. Inc. v. VI/XII Collateral Trust* (*In re Nat'l Century Fin. Enters., Inc*.), No. 05-8048, 2006 WL 620643, *1 (B.A.P. 6th Cir. Mar. 14, 2006).

## 2.　　　Standard and Method of Review Regarding the Fee Order

The Panel also must determine whether the Bankruptcy Court's fee award was appropriate. An appellate court reviews a fee award for abuse of discretion. *Adell v. John Richards Homes Bldg. Co., LLC* (*In re John Richards Homes Bldg. Co., LLC*), 475 B.R. 585, 592 (E.D. Mich. 2012). A trial court abuses its discretion when it commits a clear error of judgment; if reasonable people could differ on the issue, there is no abuse. *Id*.

## FACTS

Nicole Gas Productions, Ltd. ("Debtor") is the Chapter 7 debtor in the matter before the Panel. Freddie L. Fulson, now deceased[1], was the indirect equity owner of Debtor. Fulson's equity interest in Debtor resulted from his owning a company known as Nicole Gas Marketing,

---

[1]S. Brewster Randall III and Curtland H. Caffey, the Co-Administrators of Fulson's probate estate, are Appellants in this matter, along with Fulson's former counsel James A. Lowe.

which company was the sole owner of Debtor.  Before filing bankruptcy, Debtor had business relationships with various branches of Columbia Gas.  Those relationships soured, resulting in litigation between Debtor and numerous Columbia Gas entities.  Eventually, Debtor filed bankruptcy and the bankruptcy estate obtained its causes of actions against the Columbia Gas entities.  Appellee Frederick L. Ransier is the Chapter 7 Trustee of Debtor.

While Debtor's bankruptcy was pending Fulson, represented by Appellant James A. Lowe, filed a state court complaint (and subsequently an amended complaint) against the Columbia Gas entities.  Both complaints sought relief under the Ohio Corrupt Practices Act ("OCPA" or the "Act").  The relevant portion of that Act is Ohio Revised Code Section 2923.34(E), which states:

> [A]ny person directly or indirectly injured by conduct in violation of section 2923.32 of the Revised Code or a conspiracy to violate that section, other than a violator of that section or a conspirator to violate that section, in addition to relief under division (B) of this section, shall have a cause of action for triple the amount of actual damages the person sustained.

O.R.C. § 2923.34(E).

Fulson's state court complaints alleged that the Columbia Gas entities caused him indirect injury by harming Debtor, a company in which he owned an indirect equity interest.  However, the only damages Fulson pled were those Debtor suffered—he did not claim any unique individual damages.  Appellants conceded as much in their initial appellate brief, recognizing that Fulson only sought damages necessary "to make [Debtor] whole." *Joint Brief of Appellants*, p. 20.  Ransier, as Trustee, eventually settled the Columbia Gas claims on behalf of Debtor's estate.  The Appellants believed the settlement did not return full value for the claims and objected to it.  The Bankruptcy Court denied their objections.

As a result of Fulson's ongoing state court efforts, Ransier moved for contempt against Appellants in the Bankruptcy Court.  Ransier argued that Fulson had merely a derivative claim based entirely on Debtor's injury and for damages that duplicated Debtor's damages.  According to Ransier, then, the claims Fulson brought in state court were causes of action that Debtor owned originally and that became property of Debtor's bankruptcy estate.  Thus, Ransier argued, the bankruptcy estate had the exclusive right to prosecute those causes of action.  Ransier

concluded that by filing a state court complaint, Appellants violated Debtor's automatic stay by appropriating estate property without the Bankruptcy Court's permission.

Fulson, through Lowe, responded that his state court action pled his own individual claims, not any causes of action that Debtor or Debtor's bankruptcy estate owned. Fulson took the position that his claim was one for "indirect" injury that fell within the OCPA, although he recognized confusion regarding what the word "indirect" means for OCPA purposes. In an effort to clear up that confusion, Fulson requested the Bankruptcy Court seek the Ohio Supreme Court's input regarding the meaning of the word "indirect" in the OCPA.

The Bankruptcy Court denied Fulson's request. According to the Bankruptcy Court, the "directly or indirectly injured" language of the OCPA did not abrogate the common law principle that an injured shareholder has only a derivative claim deriving from the corporation and not an individual claim separate from the corporation. The Bankruptcy Court agreed with Ransier that the causes of action against the Columbia entities were the exclusive property of Debtor's estate. It followed, then, that Fulson violated the automatic stay by wrongfully appropriating estate property when he pursued those claims in state court. As a result, the Bankruptcy Court held Appellants in contempt for violating 11 U.S.C. § 362(a)(3).

As part of the Contempt Order, the Bankruptcy Court established a procedure for determining the amount of damages Debtor's estate sustained due to the contemptuous conduct. In compliance, Ransier prepared and filed a detailed fee statement, to which Appellants objected. The Bankruptcy Court held a hearing regarding the fee statement and objections, with Ransier testifying. At the conclusion of that hearing, the Bankruptcy Court directed Ransier to supplement his fee statement with additional fees and expenses incurred in complying with the Contempt Order and addressing Appellants' ongoing contemptuous conduct. Ransier sought $95,386.25 and the Bankruptcy Court awarded him $91,068.00, which Appellants argue included fees and expenses connected with the fee hearing itself. The Appellants appealed the Contempt Order as well as the portion of the Bankruptcy Court's Fee Order that Appellants claim awarded Ransier fees incurred defending his fee request.

After filing this appeal, Appellants requested the Panel certify to the Ohio Supreme Court a question similar, though not identical, to the one they requested the Bankruptcy Court certify. The Panel agreed and certified the following question to the Ohio Supreme Court:

> Whether a shareholder of a corporation has standing to bring a claim individually (as opposed to merely derivatively) under the Ohio Corrupt Practices Act, R.C. 2923 et seq., which provides standing to any person "directly or indirectly injured," based on an injury to the value of the shareholder's interest in the corporation?

Opinion Re: Motions to Certify Question of State Law at 4, Aug. 19, 2016, BAP Nos. 15-8053 & 15-8055 ECF No. 19.

The Ohio Supreme Court declined to answer the certified question, leaving the Panel to do so. The answer to that question remains dispositive. If a corporate shareholder has standing to bring an individual claim under the OCPA, that claim is his personal property and does not belong to the corporation. Thus, if Fulson had an individual claim, that claim was not Debtor's property and did not become part of Debtor's bankruptcy estate. However, if Fulson had merely a derivative claim based solely on Debtor's injury and damages, his state court efforts appropriated estate property, subjecting him to contempt.

## DISCUSSION OF THE CONTEMPT ORDER

1. **The OCPA Does Not Allow an Equity Owner of a Corporation to Pursue an Individual Claim Based on Damage to the Value of His Interest in That Corporation.**

The first issue before the Panel is whether the OCPA gave Fulson an individual claim against the Columbia Gas entities that was separate and distinct from Debtor's claims. The Panel finds the Act did not create such an individual claim.

The plain language of the OCPA grants standing to anyone injured "directly or indirectly" by conduct that violates that Act. O.R.C. § 2923.34(E). While the OCPA was modeled after federal RICO statutes, it broadens the standing of those federal statutes by allowing a party to recover when "indirectly" injured. *CSAHA/UHHS-Canton, Inc. v. Aultman Health Found.*, No. 2010CA00303, 2012 WL 750972, at *18 (Ohio App. 5th Dist. Mar. 5, 2012).

Thus, Appellants correctly note that the Ohio Legislature intended the OCPA to offer standing to a broader class of plaintiffs than federal RICO statutes. *See Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F. Supp. 2d 771, 787 (N.D. Ohio 1998) (hereinafter *Iron Workers I*).

What is not clear from the statute's plain language, however, is whether the Ohio Legislature intended the Act to create standing for individual shareholders when their company suffers damage. Doing so would have abrogated a century of common law regarding the legal relationship between shareholders and their corporations. Applying relevant canons of statutory interpretation leads the Panel to conclude the Legislature did not intend the overhaul of corporate jurisprudence that would result from Appellants' reading of the OCPA.

Principles of statutory interpretation require a court construe a statute such that no clause, sentence, or word is rendered superfluous. *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495 (2000)). Additionally, a court must presume that a "legislature says what it means and means what it says." *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 512 (6th Cir. 2015). Appellants note these principles while arguing that to preclude a shareholder or equity owner from bringing an individual claim under the OCPA would render the statute's "indirectly injured" language superfluous. While the Panel recognized that theoretical risk in its Certification Opinion, after full review of this matter and oral argument of the parties, the Panel concludes that this theoretical risk was not realized in this case.

Disallowing individual shareholder claims under the OCPA does not render the Act's language superfluous. Likewise, the Legislature can "mean what it said" when it granted standing to those who suffer indirect injury without intending to turn on its head a century of law governing shareholder litigation. Shareholder derivative suits involve one discreet corner of corporate jurisprudence. There remain plenty of other circumstances where the OCPA's broadened standing provision opens the courthouse doors to new plaintiffs without overturning Ohio's well-settled law governing shareholder litigation.

Application of other relevant guidelines for statutory interpretation supports this conclusion. A court construing a statute should not presume that a legislature intended to repeal settled rules of common law unless the statutory language clearly expresses or imports such intention. *Mann v. Northgate Investors, L.L.C.,* 5 N.E.3d 594, 598-99 (Ohio 2014) (citing *State ex rel. Morris v. Sullivan*, 90 N.E. 146 (Ohio 1909)). Instead, "statutes are presumed to embrace the common law extant at their enactment." *Mann*, 5 N.E. 3d at 599. Under the longstanding Ohio law extant when the OCPA was enacted, a shareholder has no right to bring an individual claim based on injury to a corporation in which he owns an interest. *Warren Tel. Co. v. Staton*, 189 N.E. 660, 663 (Ohio Ct. App. 1933); *Bloom & Co. v. Ray*, 1923 WL 1781, at *1 (Ohio Ct. App. Mar. 16, 1923). Instead, a shareholder may bring such a claim, if at all, only on behalf of the corporation through a shareholder derivative suit. *Polikoff v. Adam*, 616 N.E. 2d 213, 218 (Ohio 1993).

The seminal Ohio case on this issue is *Adair v. Wozniak*, 492 N.E.2d 426 (Ohio 1986). In *Adair*, the Ohio Supreme Court reiterated the common law principle that a corporation, not its shareholders, has a claim for injury sustained by or wrong done to the corporation. *Id.* at 428. The Ohio Supreme Court further noted that "wrongful action by third parties impairing the capital position of the corporation gives no right of action to the shareholders as individuals for damages[.]" *Id*. at 429.

> On that issue, the Bankruptcy Court wrote in its opinion regarding the Contempt Order:
>
> One of those principles is the previously discussed "well-settled [rule] that only a corporation and not its shareholders can complain of injury sustained by, or wrong done to, the corporation." *Adair*, 492 N.E.2d at 428. This principle is grounded not only on the fact that injuries shareholders incur as a result of harm to the company are indirect, but also on the fact that the claims on account of those injuries are "duplicative [of] the corporation's right of action." *Id*. at 429. There is no reason to believe that a plaintiff may bring an indirect claim under the OCPA if there is a bar to bringing the claim—such as its duplicative nature— other than the claim's indirectness. To the extent indirectness is a bar to recovery, the OCPA may remove it, but it does nothing to remove the bar erected by the principle that shareholders have no right of recovery on claims that are derivative and duplicative of claims held by the corporation.

*In re Nicole Gas Production, Ltd.*, 519 B.R. 723, 746 (Bankr. S.D. Ohio 2014).

*Adair* did not involve a claim under OCPA and, therefore, did not directly address the instant situation. But it does reflect the applicable common law that was in place when Ohio enacted the OCPA, and the Bankruptcy Court was correct to rely on it. Despite being free to do so, the Ohio Legislature did not express in the OCPA a clear intent to repeal that well-settled common law. Instead, the Bankruptcy Court and the Panel must presume that contrary to abrogating that common law, the OCPA actually embraces it. *See Mann, supra*. Embracing the relevant law requires the Panel to conclude the Bankruptcy Court was correct in its Contempt Order—the OCPA may have removed indirectness as a bar to recovery, but it did not remove the bar that exists due to Ohio common law applicable to this matter. Thus, the OCPA did not provide Fulson an individual claim against the Columbia Gas entities.

**2. The Claims Against the Columbia Gas Entities Were Estate Property.**

Fulson did not have an individual claim against the Columbia entities. He was positioned as any other shareholder or equity owner of an injured corporation, possessing only a right to pursue relief on the corporation's behalf. A shareholder's only injury is the loss in value of his share, which is nothing more than the corporation's lost value reduced in proportion to the shareholder's interest. Thus, when a shareholder's injury consists merely of lost value to his corporate interest, that injury derives from and is the same as the corporation's injury. *Crosby v. Beam*, 548 N.E.2d 217, 219 (Ohio 1989). Accordingly, it is the corporation that has suffered a distinct injury and the corporation's recovery provides redress for the shareholder's injury.

The Panel recognizes that there may be situations in which a shareholder suffers injury that is separate and distinct from the corporation's injury. In *Crosby,* for example, the court allowed minority shareholders to bring claims for breach of fiduciary duty against the majority shareholders, as those claims were not derivative of any claims held by the corporation. But that is not what happened here. Appellants have conceded at least three times—in the state court complaint, before the Bankruptcy Court, and in their initial appellate brief—that Fulson sought recovery which would make *Debtor* whole. At all stages leading up to this appeal, Appellants were unable to identify any damages Fulson suffered separate and independent from Debtor's damages. That is because Fulson's only alleged damages are the result of harm the Debtor

suffered, and he had no unique, individual right to recover those damages. Instead, Fulson was merely asserting the recovery rights of a third party.

As the Panel previously noted, the OCPA may remove indirectness as a bar to recovery, but that does not remove the bar erected by the principle that shareholders have no right to recover on "claims that are derivative and duplicative of claims held by the corporation." *Nicole Gas*, 519 B.R. at 746; *See also Cleveland v. JP Morgan Chase Bank, N.A.*, No. 98656, 2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013) in which an Ohio Appellate Court affirmed a trial court's decision dismissing an OCPA claim because the complaining party's cause of action was based on derivative injury. The language of the OCPA reinforces this conclusion. In the OCPA the word "indirectly" modifies "injury" and should be read in the context of proximate cause, not individual damages. The Panel does not read that language as abrogating the requirement that someone suffer individual damages before having a right to relief. For these reasons, the Panel finds that the Bankruptcy Court correctly determined that Debtor, not Fulson, had the right to seek recovery from the Columbia Gas entities.

If a debtor has the right to raise a state claim at the beginning of a bankruptcy case, that claim becomes the exclusive property of the bankruptcy estate. *Honigman v. Comerica Bank (In re Van Dresser Corp.),* 128 F.3d 945, 947 (6th Cir. 1997). Because Debtor owned the causes of action against the Columbia Gas entities, Debtor had the right to bring state court claims against those entities at the time its bankruptcy began. Accordingly, when Debtor's bankruptcy began, those claims became exclusive property of Debtor's bankruptcy estate.

Appellants argue that the duplicative nature of the claims did not preclude Fulson from pursuing his own individual claims against the Columbia entities. According to Appellants, duplication of the claims is not an issue because Fulson's damages would be offset by the settlement Debtor's estate received from the Columbia Gas entities. That argument misses the point. A duplicative claim, by definition, is identical to and derives from another claim. The duplicative nature of Fulson's alleged injury stops the analysis before it becomes necessary to discuss offsetting damages. To the extent Fulson had any claims, they were derivative of the corporation's claim, relied entirely on the corporation's harm, and were redressed by the corporation's recovery.

Put more plainly, there is no need to ever discuss offsetting in a situation like this because it is impossible for someone in Fulson's position to demonstrate separate and distinct damages in the first place. Once the corporation is made whole, there is no longer a need for a shareholder or other equity owner to advocate on its behalf. Thus, when a corporation recovers for its injury (as Debtor did via the settlement Ransier obtained) the equity owner's derivative claim is extinguished. The consequence of the corporation settling its claims underscores the harsh reality that a shareholder simply has no individual claim through which he can recover damages that would need to be offset.

Appellants argued during this appeal that Fulson's unique damages were the difference between the settlement value and what Appellants believed was full value for the Columbia Gas claims. However, neither Fulson nor the other Appellants made such a claim before this appeal. Appellants previously sought to recover the full value of *Debtor's* damages, not Fulson's damages, and only offered the "difference in value" argument after failing in the lower court. Barring extraordinary circumstances, a reviewing court does not consider new arguments first raised on appeal. *Khan v. Bankowski (In re Khan),* 375 B.R. 5, 13-14 (B.A.P. 1st Cir. 2007); *Drewes v. Vote (In re Vote),* 261 B.R. 439, 441 (B.A.P. 8th Cir. 2001). The Panel finds that no extraordinary circumstances exist here to justify considering Appellants' new argument.

Finally, Fulson's response to the proposed settlement, in the Bankruptcy Court, contradicts the position Appellants now take before the Panel. Appellants claim the settlement was the last "predicate act" giving rise to Fulson's claim and that the settlement fixed the value of Fulson's damages. But Fulson objected to the settlement in the Bankruptcy Court. Accepting Appellants' current arguments would require the Panel to conclude that objecting to the settlement was, at best, counter-productive. Rather than objecting, they should have done everything possible to facilitate the settlement, without which Fulson could not seek the individual relief he claims he deserves. Their conduct regarding the settlement, combined with the reasoning above, lead the Panel to conclude that Appellants' arguments are not persuasive. Fulson had no individual claim, either before or after the settlement. The claims against the Columbia Gas entities belonged to the Debtor. Once Debtor filed bankruptcy, those claims became the exclusive property of Debtor's bankruptcy estate.

**3.      Fulson Violated the Automatic Stay and Contempt was Appropriate.**

According to 11 U.S.C. §362(a)(3), a party violates the automatic stay by obtaining possession of or exercising control over property of a bankruptcy estate. This broad prohibition extends to "virtually all formal and informal actions" against estate property. *Smith v. First America Bank, N.A. (In re Smith)*, 876 F.2d 524, 525-26 (6th Cir. 1989). In this case, the claims against the Columbia Gas entities were the property of Debtor and, after Debtor filed bankruptcy, Debtor's estate. Thus, Fulson's efforts to recover for the damages Debtor suffered constituted an act to exercise control over estate property.

Additionally, the greater the impact a party's actions will have on the estate, the greater likelihood that those actions constitute an impermissible exercise of control over estate property. *Harchar v. United States (In re Harchar)*, 393 B.R. 160, 177 (Bankr. N.D. Ohio 2008). Appellants cannot avoid the detrimental impact Fulson recovering for his alleged individual claim would have worked on the bankruptcy estate. If Fulson had been successful in his state court litigation, his recovery would have substantially and negatively impacted the estate. Every dollar Fulson would have recovered would represent a dollar the estate could not recover. Any payment to Fulson would have reduced the resources available to the estate to pay Debtor's creditors, resulting in an exercise of control over estate property.

Furthermore, allowing Fulson to pursue individual claims probably would have scuttled Ransier's settlement efforts on the estate's behalf. It is unlikely the Columbia Gas entities would have agreed to settle if they had to fear ongoing litigation from anyone with a tangential connection to the damages alleged. These practical implications of Fulson pursuing claims against or recovering from the Columbia Gas entities support the conclusion he was exercising control over estate property when he filed his state court claims. Exercising control over estate property without court permission violates Section 362(a). Therefore, the Bankruptcy Court did not abuse its discretion when it held Appellants in contempt for pursuing the state court actions at issue.

**4.      The Case Law Appellants Cite Does Not Support Their Position.**

Appellants rely extensively on a series of cases that are factually distinct from the instant situation.  They cite a line of cases known as *Iron Workers*.  This line includes *Iron Workers I*; *Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc.*, 29 F. Supp. 2d 801 (N.D. Ohio 1998) (hereinafter *Iron Workers II*); and *Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc.*, 29 F. Supp. 2d 825 (N.D. Ohio 1998) (hereinafter *Iron Workers III*).  In those cases, union health insurance trusts brought OCPA claims for smoking-related medical expenses that the trust paid on behalf of insured members.  The defendants moved to dismiss, arguing that the insurance trusts suffered no direct injury and could not bring a direct action. *Iron Workers I*, 23 F. Supp. 2d at 786.  The district court denied the motion because compensating smokers for their personal injuries did not compensate the trusts for the medical bills they paid on the smokers' behalf.  *Id*. at 791.  Because the trusts' claims were not duplicative of the smokers' claims, each set of plaintiffs could pursue their own relief.  In this case, Fulson suffered no injury distinct from Debtor's injury.  His claim is entirely duplicative of Debtor's claim.

Appellants also rely heavily on *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988), which is another distinguishable case.  *Rhoades* involved litigation between a bankrupt corporation and one of its general creditors; it did not involve an equity holder of the debtor company.  *Id*. at 1097.  And like *Iron Workers*, the plaintiff in *Rhoades* sought to recover for its own direct damages, not those the corporation suffered.  *Id*. at 1101.  In fact, *Rhoades* reiterated the common law principle that is fatal to Fulson's claims, stating:

> This conclusion is not contrary to our decision in *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), where we held that the shareholder of an injured corporation did not have individual standing to bring a claim under civil RICO.  In so holding, we merely recognized a standing requirement applicable throughout corporate law: "An 'action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation'" through a derivative action.  *Id.* at 849 (*quoting Warren v. Manufacturers National Bank*, 759 F.2d 542, 544 (6th Cir.1985)).

*Rhoades*, 859 F.2d at 1101.

Thus, in addition to being factually distinct from this case, *Bankers* actually reinforces the legal reality that a shareholder in Fulson's position has no individual claim for injury suffered by the corporation in which he owns an interest. For the reasons stated, the Panel finds Appellants' arguments lack merit.

## DISCUSSION OF THE FEE ORDER

In addition to attacking the Contempt Order, Appellants also argue the Bankruptcy Court erred by awarding Ransier certain fees he incurred in defending his fee application. They support their argument, initially, by citing *Baker Botts, L.L.P. v. ASARCO, L.L.C*, 135 S. Ct. 2158 (2015), which involved a fee application under 11 U.S.C. §330, which governs compensation for certain professionals in a bankruptcy case. However, the Bankruptcy Court in this case did not base its award on Section 330. In its opinion supporting the Fee Order, the Bankruptcy Court noted the basis for the award:

> A "[trial] court ha[s] broad discretion to fashion an appropriate remedy for . . . contempt," and "[i]n a civil contempt proceeding, judicial sanctions can be used not only to coerce compliance, but also to compensate the complainant." *Williamson v. Recovery Ltd. P'ship*, 467 F. App'x 382, 396 (6thCir. 2012) (internal quotation marks omitted). In order to recover fees and expenses as compensation for contemptuous conduct, a party must demonstrate that the fees and expenses were incurred as a result of the contempt. *See Ross v. Meyers*, 883 F.2d 486, 491 (6th Cir. 1989) . . .; *Liberis v. Craig*, No. 87-5321, 1988 WL 37450, at *8 (6th Cir. Apr. 25, 1988) . . . As the Court found above, fees in the amount of $89,011.25 and expenses in the amount of $2,056.75 were incurred by Ransier as a result of the Fulson Parties' contempt.

*In re Nicole Gas Production, Ltd*., 542 B.R. 204, 218 (Bankr. S.D. Ohio 2015).

Thus, the Bankruptcy Court did not rely on Section 330 when awarding Ransier fees. Instead, the Court's fee award fell squarely within both its authority under the Bankruptcy Code and its inherent authority as an Article III court. Under Section 105(a), a bankruptcy court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The power granted in Section 105(a) carries with it the authority to "award attorney fees as a sanction for misconduct." *In re Mehlhose*, 469 B.R. 694 711 (Bankr. E.D. Mich. 2012). Additionally, even apart from the Bankruptcy Code, bankruptcy courts enjoy the same inherent authority invested in all Article III courts to sanction parties for improper

conduct.  *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996).  In this case, the sanctions the Bankruptcy Court imposed find their basis in both Section 105 and the Court's inherent authority.  Accordingly, neither Section 330 nor *Baker Botts* apply.

Appellants also reference the "American Rule" and argue that fees should not have been allowed because fee-shifting statutes generally provide that only a "prevailing party" or "successful litigant" can receive an award of fees.  This is misguided as well.  Initially, the American Rule does not apply to this situation.  An exception to the American Rule exists when a court imposes sanctions by virtue of its inherent power.  *Liberis v. Craig*, No. 87-5321, 1988 WL 37450, at *5 (6th Cir. Apr. 25, 1988).  That is what happened here.  The Bankruptcy Court did not award Ransier fees and expenses because it deemed him a prevailing party.  It made that award to sanction Appellants for their conduct.

Moreover, Appellants' claim that Ransier was not a "prevailing party" with regard to his fee request is not persuasive.  Even assuming, *arguendo*, some form of the American Rule applied requiring Ransier to "prevail" in this matter, the facts would compel the Panel to find that he did so.  Ransier sought a total of $95,386.25 in fees.  The Bankruptcy Court awarded him $91,068.00, which is more than 95% of what he requested.  That does not reflect an unsuccessful effort by Ransier.  Thus, the Panel is left to consider whether the Bankruptcy Court abused its discretion by awarding Ransier fees totaling $91,068.00.  The Panel finds no such abuse.

Regarding the fees, the Bankruptcy Court conducted an initial hearing at which Ransier presented a detailed fee statement, an affidavit, and his own testimony.  The Bankruptcy Court then directed Ransier to supplement his affidavit with additional detail regarding his firm's billing policies and to provide an updated statement with the fees and expenses incurred since the first statement.  Additionally, another attorney at Ransier's firm submitted an affidavit in support of his efforts.

The Bankruptcy Court then entered the Fee Order, which is more than 50 pages long, to explain its decision.  In that Order the Court discussed in painstaking detail the support for its award.  The Court noted its duty to review the fee statements and reduce them if any fees sought did not result from the Appellants' contemptible conduct.  As a result, it denied Ransier's request

for fees associated with objecting to proofs of claim and dealing with hearings unrelated to the contempt issue. It also denied fees for research Ransier did to determine if he could charge the Appellants for conducting other research.

After making these reductions, the Bankruptcy Court stated:

> [I]n sum, as a result of its independent review, the Court is reducing Ransier's fees by $2,039.25. As explained in Section V.B below, the Court is reducing the fees by an additional $398 as a result of the objections. . . . Based on Ransier's testimony and a line-by-line review of the Fee Statements, the Court concludes that the remainder of the fees sought by Ransier were reasonably and necessarily incurred as a result of the Fulson Parties' persistent attempts to exercise control over property of NGP's bankruptcy estate.

*In re Nicole Gas Production, Ltd.*, 542 B.R. 204, 213-14 (Bankr. S.D. Ohio 2015).

The Court referred to Appellants' "persistent attempts to exercise control," connecting the fees it awarded to the behavior for which it held Appellants in contempt in the first place. The court then proceeded to spend more than 30 pages justifying its award, explaining in detail how the fees included were related to Appellants' contempt. The fee award in this case finds solid footing both in law and the facts before the Panel, and the Bankruptcy Court did not abuse its discretion by ordering it.

## CONCLUSION

The Panel affirms the Bankruptcy Court's Contempt Order and affirms the Bankruptcy Court's Fee Order. Regarding the Contempt Order, Fulson did not have an individual claim under the OCPA. Instead, he and his counsel exercised control over estate property by pursuing claims that were the exclusive property of Debtor's estate. Those actions violated the automatic stay and the Bankruptcy Court acted properly by holding Appellants in contempt as a result.

As to the Fee Order, the Bankruptcy Court properly exercised its inherent authority to impose sanctions for contempt. The Fee Order explains clearly and in detail how the fees awarded derived from Appellants' contempt. The Order does not reflect an abuse of the Bankruptcy Court's discretion.